G. W. McWHIRTER and Bernice McWhirter, Plaintiffs in Error,

v.

TOWN OF SENTINEL, Oklahoma, a Municipal Corporation, Defendant in Error.

No. 42492.

Supreme Court of Oklahoma.

June 2, 1970.

Rehearing Denied June 23, 1970.

Meacham, Meacham & Meacham, Clinton, for plaintiffs in error.

Wesner & Wesner, Cordell, Ivester, Ivester & Ivester, Sayre, for defendant in error.

LAVENDER, Justice.

This appeal, by the plaintiffs in the trial court, G. W. McWhirter and Bernice McWhirter (husband and wife), arises in an action by them against the Town of Sentinel, Oklahoma, a municipal corporation, as defendant, for the amount claimed to be due them under a contract with the town, which permitted the town to drill water wells on a certain tract of land owned by the plaintiffs, and to take water therefrom for the town's water system.

A trial by jury resulted in a verdict for the plaintiffs in the amount prayed for in their petition. The trial court overruled the town's motion for judgment in its favor notwithstanding the verdict, rendered judgment based upon such verdict, but later sustained the town's motion for a new trial, without stating its reason for doing so. The plaintiffs appeal to this court, contending that the trial court abused its discretion, and committed error, in granting a new trial, because the cause was correctly submitted to the jury, and there is evidence to support the jury's verdict in the amount of the verdict.

The plaintiffs pleaded a written contract dated September 18, 1959, which permitted the town to drill test wells on a described tract of land near the town (without any limitation upon the number of wells), and, if water be found in sufficient quantities for municipal use, to erect and place pumps and other equipment necessary to permit the town to use, for municipal uses, the water that may be found. The attached copy of the alleged contract, consisting of three typewritten pages, contains on page two thereof, the following paragraph concerning money payments to be made by the town:

"If the Town desires to use said water wells and shall connect its pumps to any of said wells and cause the water to be brought into the Town for municipal use, the Town shall pay the Parties of the First Part the following: $100.00 per year general rent, *plus the sum of $100.-00 per year per well, payable at the end of each year for the privilege of using said wells* with this further understanding that if said Town starts using water from the first well, then and in that event, said Town is required to pay a total of $1,000.00 immediately as an advance payment, and said Town shall be credited with said amount at the rates above specified, and to continue to make annual payments after said $1,000.00 credit has been used, until said wells are abandoned for municipal purposes."

Another paragraph of said contract provided that the parties of the first part should have the privilege of tapping the water pipe of the town for all of the water necessary for household use and livestock use, free of charge.

The petition alleged that the town established four water wells on the premises in June of 1960, had been using water therefrom ever since, and had paid the agreed rental up to June of 1963, and was indebted to the plaintiffs in the amount of $1,-500.00 for unpaid rentals up to June 1965. The petition was filed on October 29, 1965.

The town was served with summons and filed an answer which, in addition to a general denial, admitted that the plaintiffs were the owners of the tract of land described in their petition, and that the town entered into a contract with them concerning water wells on the premises and the taking of water therefrom, but specifically denied that it entered into the contract pleaded by the plaintiffs, or that it was indebted to the plaintiffs in any sum whatsoever. As disclosed by the copy attached to the answer, the written contract pleaded by the town consists of three typewritten pages, with the first and third pages thereof being identical with the first and third pages of the written contract pleaded by the plaintiffs, and with all of the language appearing on the second page thereof, other than the paragraph concerning money payments to be made by the town to the parties of the first part, being identical with the language appearing on the second page of the written contract pleaded by the plaintiffs. In the town's version of the written contract, the paragraph, on page two thereof, concerning money payments to be made by the town states:

"If the Town desires to use said water wells and shall connect its pumps to any of said wells and cause the water to be brought into the Town for municipal use, the Town shall pay the Parties of the First Part the following: $100.00 per year general rent, *plus a bonus of $100.00 for each well connected for Town use without any additional payments other than a general annual rental of $100.00 above mentioned*, with the further understanding that if said Town starts using water from the first well, then and in that event, said Town is required to pay a total of $1,000.00 immediately as an advance payment, and said Town shall be credited with said amount at the rates above specified, and to continue to make annual payments *of $100.00 per year general rent* after said $1,000.00 credit has been used until said wells are abandoned for municipal purposes."

Copies of the two instruments, each bearing on the third page thereof, signatures purporting to be the signatures of the two plaintiffs, Raymond Ridling as Mayor of the Town, Ruby Williams, as Town Clerk, and Claud O. Smith as notary public, were received in evidence, and each of those persons identified his or her own signature thereon.

According to the testimony in the record, two members of the town board, as of the time of the contract and the trial, negotiated with the McWhirters concerning a water contract, then went to the town's attorney in Cordell and had him prepare a contract. The attorney dictated a contract to his secretary, and later delivered the ribbon-copy and a carbon copy thereof to the board members, and retained one carbon copy for his office file. The board members took the two copies to the town clerk's office in Sentinel, and, on the morning of September 29, 1959, a Friday, one of them, Mr. Orval Henderson, took the carbon copy to the plaintiffs' home on the premises described in the contract, left it with them, and told them that, if they were satisfied with it, bring it to the bank and they would be ready to close the deal. The other member of the board took the ribbon copy to the bank in Sentinel, signed it before one of the officers who was a notary public, left it with him, and returned later that day and signed the other copy which, by then, had been brought into the bank and, like the ribbon copy, bore the signatures of Mr. and Mrs. McWhirter. The town clerk went to the bank, attested Mr. Ridling's signature on both copies, and brought the ribbon copy to her office, where she kept it in the office safe until Monday morning, when she mailed it to the county clerk to be recorded. Mr. McWhirter took the other copy to his home and Mrs. McWhirter kept it in her possession until about July 15, 1963, when it was discovered that the money-payment provision in their signed copy did not correspond with the money-payment provision in the town's signed ribbon copy or the attorney's unsigned carbon copy, and then

filed their copy for recording by the county clerk.

According to the testimony of the two board members, the town clerk, and the banker, they read the ribbon copy but never did read the other copy, and according to the testimony of the McWhirters, they read their copy of the contract but never did read the ribbon copy.

The testimony of the two members of the town board who took part in the oral negotiations, concerning money payments to be made by the town, was in harmony with the instrument pleaded and introduced in evidence by the town. The plaintiffs testified that they had refused such an offer and their testimony concerning their agreement as to the money payments to be made by the town was in harmony with those set out in the instrument pleaded and introduced in evidence by the plaintiffs.

Mr. McWhirter and Mr. Ridling (who, at the time of the trial had been a member of the town board for about 17 years, including the year 1959, and still was) testified that the town completed four water wells on the premises in June of 1960; that the town started pumping water from the four wells at that time; and that the town made the required advance payment of $1,000.00 in June of 1960. Mr. McWhirter testified that the town pulled the pump from one of the wells early in 1964, and pulled the pump from another one of the wells a little later, and, since then, had been pumping water from only two wells on the premises. Mr. Ridling testified that the town had pulled the pump from one of the four wells, and plugged the well, about a year after completion of the wells, and pulled the pump from another one of the wells, and plugged the well, about a year after plugging the first one, and did this because there was so much sand in the wells that they kept burning out pumps; and that, insofar as he knew, the town board never had any intention of ever using those wells again.

There was evidence to support either of the exhibits as being the one correctly stating the parties' agreement concerning money payments. Under the town's version and the evidence, the town would not have been indebted to the plaintiffs in any amount as of June of 1965. The verdict in favor of the plaintiffs, signed by nine jurors, infers a finding that the plaintiffs' exhibit correctly stated the parties' agreement on that score.

In addition to $100.00 per year "general rent," and the advance payment of $1,000.-00 to be credited at the rates specified until used up, the plaintiffs' version of the written contract provides for "the sum of $100.00 per year per well, payable at the end of each year *for the privilege of using said wells.*"

We believe that this provision of the plaintiffs' exhibit is unambiguous and clearly contemplates that, in addition to the $100.00 per year "general rent," the town shall pay to the plaintiffs, as of the anniversary of the town's starting to use water from the premises, an amount equal to $100.00 per year for each well from which the town used water during the particular one-year period—chargeable against the town's advance payment of $1,000.00 until its credit therefor is exhausted. It does not contemplate that the town shall be required to pay, in addition to the $100.00 annual "general rent," $100.00 per year for each water well drilled on the premises until all of such wells are abandoned by the town.

Even the plaintiffs' testimony does not support their claim for $500.00 for each and every one of the five yearly periods from June of 1960 to June of 1965 (less the $1,000.00 advance payment made by the town in June of 1960). Under their testimony, there was at least one full June-to-June period during that time in which the town was taking water from only three— or possibly only two—wells. Under the town's testimony, there were at least two full June-to-June periods, during that five-year period, during which the town was taking water from only two wells, and another full June-to-June period during

that five-year period, in which the town was taking water from only three wells.

Consequently, there was error in the assessment of the amount of the plaintiffs' recovery and the verdict and judgment in the full amount of $1,500.00 is not supported by any evidence. Those were two of the three grounds alleged by the town in its motion for a new trial. The trial court did not abuse its discretion, or err otherwise, in sustaining the town's motion for a new trial.

A remittitur cannot be provided for in this instance, because it is impossible to determine from the evidence how much the judgment should be based upon the plaintiffs' version of the contract.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, and HODGES, JJ., concur.